

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One St. Andrews Plaza*
*New York, New York 10007*

January 7, 2021

BY ECF

Hon. Lorna G. Schofield
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

Re:      United States v. Natalya Grabovskaya,
              16 Cr. 755 (LGS)

Dear Judge Schofield:

Natalya Grabovskaya is scheduled to be sentenced at 11:00 a.m. on February 2, 2021. The Government respectfully submits this letter to advise the Court of the pertinent facts concerning the substantial assistance Grabovskaya provided in the investigation and prosecution of others.

As she admitted in part during her plea allocution, and more completely in interviews with the Government, Grabovskaya participated in a scheme to defraud the federal Medicare Program ("Medicare") and the New York State Medicaid Program ("Medicaid"). This participation took place during two different periods of employment, totaling roughly a year and a half, between 2010 and 2012. But Grabovskaya also provided valuable assistance to the Government in its investigation and prosecution of other participants in the scheme, including trial defendants Paul J. Mathieu and Hatem Behiry. Given these facts, and assuming that Grabovskaya continues to comply with the terms of her cooperation agreement, the Government intends to move at sentencing, pursuant to Section 5K1.1 of the Sentencing Guidelines, that the Court sentence her in light of the factors set forth in Section 5K1.1(a)(1)-(5).

## I.      **Background and Offense Conduct**

As set forth in the Pre-Sentence Investigation Report filed on November 23, 2020 ("PSR"), and as the Court is aware having presided over the trial of Mathieu and Behiry, between approximately 2007 and 2013, Aleksandr Burman and his co-conspirators perpetrated a lucrative fraud scheme to establish and operate six medical clinics dedicated to defrauding Medicare and Medicaid of tens of millions of dollars.

Grabovskaya participated in the fraud scheme during two different periods when she worked for Aleksandr Burman at medical clinics at three different locations. Her first period of employment ran from approximately early 2010 through the spring of 2011. After a break of a little more than a year, Grabovskaya returned in the spring of 2012, working for Burman through at least October 2012.

Hon. Lorna G. Schofield
January [x], 2021
Page **2** of **4**

During these two periods, Grabovskaya's role evolved.  Initially, her responsibilities were limited to attempting to implement a new billing system and, somewhat later, oversight over employees responsible for billing.  Eventually, however, she became a *de facto* office manager, conducting hiring interviews, coordinating the hours and duties of other employees, giving directions to other employees, and handing other tasks typical of that role.

Grabovskaya acknowledged her knowing participation in preparing false and fraudulent billing records that were used to defraud Medicare and Medicaid. She also forthrightly acknowledged her awareness of the widespread payment of kickbacks to patients of the clinics, and, indeed, her own participation in paying such kickbacks on a number of occasions.  She reported that she was unhappy about being asked to pay such kickbacks, and that that unhappiness led to her departure from the clinics in the spring of 2011.  She reported that her return in the spring of 2012 was, at her insistence, conditioned upon her no longer paying kickbacks.

In addition to admitting her own conduct, Grabovskaya provided a great deal of detailed and accurate information about the activities of her co-conspirators, which was instrumental in the investigation and prosecution of others.  This included detailed information about the way fraudulent medical and billing records were prepared, and how they were processed for payment. She also provided detailed information about the payment of kickbacks to patients, and about who was involved in those payments.

During her meetings with the Government, however, Grabovskaya sometimes failed to describe aspects of her participation in the fraud in ways that were consistent with the descriptions of other witnesses interviewed by the Government.  With respect to these aspects, Grabovskaya tended to describe her role as less significant than the role attributed to her by others.  This kind of inconsistency diminished Grabovskaya's utility as a potential witness, and contributed to the Government's decision not to call her during the trial of Mathieu and Behiry.

## II.      Procedural History, Guidelines Calculation, Forfeiture, and Restitution

Grabovskaya pleaded guilty on November 15, 2016, pursuant to a cooperation agreement, to a two-count information ("the Information") charging her with conspiracy to commit wire fraud and health care fraud, and substantive health care fraud.  (PSR ¶ 5.)

The Government concurs with the Probation Department's calculation of the applicable Sentencing Guidelines.  (*See* PSR ¶¶ 79-82.)  The total offense level is 24, based on a base offense level of six, *see* U.S.S.G. §§ 2X1.1(a) and 2B1.1(a)(2); an 18-level enhancement because the loss resulting from the offense attributable to Grabovskaya exceeded $3.5 million, but did not exceed $9.5 million,[1] *see* U.S.S.G. § 2B1.1(b)(1)(J); a three-level enhancement because the defendant was convicted of a federal health care offense involving a Government health care program with an intended loss of more than $7 million but less than $20 million, *see* U.S.S.G. § 2B1.1(b)(7)(B); and a three-point reduction for Grabovskaya's acceptance of responsibility, *see* U.S.S.G. § 3E1.1.

---

[1] The intended loss amount attributable to Grabovskaya is $8,963,530.

Hon. Lorna G. Schofield
January [x], 2021
Page **3** of **4**

Because Grabovskaya has no criminal history, she is in Criminal History Category I.  Accordingly, the Guidelines range is 51 to 63 months' imprisonment.

Pursuant to her cooperation agreement, Grabovskaya agreed to pay restitution and admitted the forfeiture allegations against her with respect to Counts One and Two of the Information.  At sentencing, the Government intends to seek a restitution order in the amount of $7,157,700 (with $4,269,533 payable to Medicare and $2,888,167 payable to Medicaid).  The Government further intends to seek forfeiture of $93,379, on consent, which represents the salary paid directly to Grabovskaya over roughly a year and a half.  Grabovskaya did not get rich from the scheme, and derived no personal benefit from the fraud beyond her modest salary.

### III.    Grabovskaya's Cooperation and Substantial Assistance

During the FBI's first interview of Grabovskaya, in May 2016, Grabovskaya minimized her role in and knowledge of the fraud scheme.  However, Grabovskaya soon thereafter began an extended series of interviews at the U.S. Attorney's Office, during which she admitted in great detail to her role in advancing the fraud scheme, particularly by assisting in the falsification of billing records being submitted to Medicare and the payment of kickbacks to patients.  As noted above, however, Grabovskaya also sometimes failed to describe as other witnesses did some aspects of her participation in the fraud.  Nonetheless, over the course of nearly three years, Grabovskaya met or spoke more than a dozen times with the Government, and provided detailed information about the fraud scheme.  Through the course of these interviews, Grabovskaya helped materially in the investigation and prosecution of others, including trial defendants Mathieu and Behiry.

Section 5K1.1 of the Guidelines sets forth five non-exclusive factors that sentencing courts are encouraged to consider in determining the appropriate sentencing reduction for a defendant who has rendered substantial assistance.  *See* U.S.S.G. § 5K1.1(a).  The application of each of these factors to Grabovskaya's cooperation is set forth below.

*1. "[S]ignificance and usefulness of the defendant's assistance" (§ 5K1.1(a)(1)):* Grabovskaya's assistance was significant and useful.  Over the course of numerous meetings with the Government, Grabovskaya provided detailed information about the operation of the scheme and the roles of various individuals, including, in particular, the mechanics of the fraudulent billing at the clinics and the individuals involved, the use of ambulette companies, and the payment of kickbacks to patients.  This was important in enabling the Government to advance its investigation and prosecution of several co-defendants, including trial defendants Mathieu and Behiry.  However, as noted above, her failure sometimes to describe as other witnesses did certain aspects of her participation in the fraud diminished her utility as a potential witness, and contributed to the Government's decision not to call her at trial.

*2. "[T]ruthfulness, completeness, and reliability of any information or testimony" (§ 5K1.1(a)(2)):*  During an initial interview at her home, Grabovskaya minimized her knowledge of the fraud scheme and her own role in that scheme.  However, once Grabovskaya began coming in to the U.S. Attorney's Office, and after she retained counsel, she provided truthful information

Hon. Lorna G. Schofield
January [x], 2021
Page **4** of **4**

about the scheme, including her own participation in aspects of the scheme, although, as noted above, she sometimes failed to describe as other witnesses did certain aspects of her participation. The information Grabovskaya provided about the fraud scheme was extensively corroborated by others.

3. *"[N]ature and extent of the defendant's assistance" (§ 5K1.1(a)(3)):* Grabovskaya met or spoke by telephone with the Government more than a dozen times over the course of nearly three years. She participated in numerous such meetings and conversations prior to entering her own guilty plea, prior to the charging of some of the other defendants, and prior to the trial of defendants Mathieu and Behiry, and for each meeting traveled a significant distance from her home in south Brooklyn.

4. *"[A]ny injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance" (§ 5K1.1(a)(4)):* To the Government's knowledge, Grabovskaya has not faced physical danger as a result of her cooperation. However, she is fearful of potential consequences within the Russian-speaking community in Brooklyn. Moreover, the process of cooperating in this case has not been easy for Grabovskaya. Over the course of her nearly three years of cooperation, the trial of her co-conspirators was adjourned twice for extended periods of time, greatly increasing the amount of time that Grabovskaya was asked to devote to this process.

5. *"[T]imeliness of the defendant's assistance" (§ 5K1.1(a)(5)):* As noted above, Grabovskaya's cooperation began before any defendants in this case were charged and well before any trial was scheduled to begin, and her cooperation contributed significantly to such subsequent charges and successful prosecutions.

## IV.    Conclusion

As a result of the foregoing, the Government has determined that Grabovskaya provided substantial assistance in the investigation and prosecution of others. She provided information that was timely truthful, and valuable. The Government therefore expects to request at sentencing that the Court sentence Grabovskaya in light of the relevant facts stated above and the factors set forth in Section 5K1.1(a)(1)-(5) of the Sentencing Guidelines.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

By:    */s/*

David Raymond Lewis
Stephen J. Ritchin
Timothy V. Capozzi
Assistant United States Attorneys
(212) 637-2404/2397/2503

cc:    Michael Zacharias, Esq. (via ECF)